## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Brendan Roden-Reynolds,<br>                    Plaintiff | :<br>: Case No.<br>: |
| v. | :<br>: |
| Metropolitan Life Insurance<br>Company, | : JURY TRIAL DEMANDED<br>:<br>: |
| and | :<br>: |
| Tyco Electronics Corporation<br>and Tyco Electronics Long Term<br>Disability Plan | :<br>:<br>: |
|                    Defendants. | :<br>: |

## COMPLAINT

AND NOW comes Plaintiff, Brendan Roden-Reynolds, by and through his undersigned attorneys at Strokoff & Cowden, P.C., and hereby brings this action against Defendants, Metropolitan Life Insurance Company, Tyco Electronics Corporation, and Tyco Electronics Long Term Disability Plan, and as for his causes of action states as follows:

## PARTIES

1.     Plaintiff, Brendan Roden-Reynolds, is an adult individual born on January 18, 1952, residing at 22 Summer Drive, Dillsburg, Pennsylvania, 17019-9544.

2.     Tyco Electronics Corporation ("Tyco Electronics") is a Pennsylvania corporation with its principal place of business located at 1050 Westlake Drive, Berwyn, PA 19312.

3.      Tyco Electronics had in place the Tyco Electronics Long Term Disability Plan ("LTD Plan"), located at 1050 Westlake Drive, Berwyn, PA  19312, providing benefits to plaintiff.

4.      Metropolitan Life Insurance Company ("MetLife") is a corporation with a home address of 200 Park Avenue, New York, New York, 10166-0188, according to the Pennsylvania Department of Insurance, and at all times relevant hereto was a corporation authorized to do business in Pennsylvania.

## JURISDICTION

5.      Plaintiff's claims "relate to" the LTD Plan, which is an employee welfare benefit plan" as defined by ERISA, 29 U.S.C. §1001 et seq.  Therefore, this Court's jurisdiction is invoked pursuant to 28 U.S.C. §1337 and 29 U.S.C. §1132(e).

6.      Venue is proper within the Middle District of Pennsylvania pursuant to 29 U.S.C. § 1132(e)(2) because the acts complained of occurred within this District.

## FACTUAL BACKGROUND
### The LTD Plan

7.      Plaintiff became employed by Tyco Electronics in 2006, as an Application Developer, and at all times relevant thereto worked for Tyco Electronics located at 200 AMP Drive, Harrisburg, PA  17112.

8.      As a full-time employee of Tyco Electronics, among the benefits provided to Plaintiff was coverage under the LTD Plan.

9.     Attached as Plaintiff's Exhibit 1 hereto is a true and correct copy of the LTD Plan, effective January 1, 2012, which is a successor LTD Plan from MetLife that Tyco Electronics previously made available to Plaintiff.  (The LTD Plan contains a cover page and 10 unnumbered pages before the Certificate of Insurance.  Citations to those pages will be identified by Roman numerals "i" thorough "x.")

10.     Plaintiff was required to make "a contribution to the cost of Disability Income Insurance: Long term disability benefits."  (See, LTD Plan, Exhibit 1, p. ii).  Plaintiff paid all required contributions over eight years to the LTD Plan.  MetLife sets "the total premium rate for insurance provided under the [LTD] Plan by MetLife."

11.     MetLife insures benefits under the LTD Plan, and "is liable for any benefits under the plan."  (See, LTD Plan, Exhibit 1, p. vi).

12.     In order to make a claim for long term disability benefits under the LTD Plan, claimants must "submit a claim for disability benefits to MetLife, MetLife will review [the] claim and notify [the claimant] of its decision to approve or deny [the] claim."  (LTD Plan, Exhibit 1, p. ii).

13.     Under the LTD Plan, if MetLife denies a claim, a claimant "may appeal the decision."  (LTD Plan, Exhibit 1, p. iii).  Per the LTD Plan, MetLife "will conduct a full and fair review of [the] claim. . . the review on appeal will take into account all comments documents, records, and other information that you submit relating to your claim

without regard to whether such information was submitted or considered in the initial determination." (LTD Plan, Exhibit 1, p. iii).  MetLife will then notify the claimant of its final decision.

14.     If MetLife denies the claim on appeal, MetLife "will send a final written decision that states the reason(s) why the claim [the claimant] appealed is being denied and references any specific Plan provision(s) on which the denial is based." (LTD Plan, Exhibit 1, p. iii).

15.     The LTD Plan identifies Tyco Electronics as the Plan Administrator of the LTD Plan.  (See, LTD Plan, Exhibit 1, p. vi).

16.     The Plan Administrator has "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits win accordance with the terms of the Plan . . . . " At no time has Tyco Electronics made a determination related to Plaintiff's claim identified in this Complaint. (LTD Plan, Exhibit 1, p. iii).

### Plaintiff's Relevant Medical History

17.     Plaintiff's relevant medical history is as follows:

a.     Plaintiff experienced a work-related injury with a prior employer in 1995, resulting in three ruptured discs and requiring back surgery and a second lower back operation.  In 2004, Plaintiff underwent an L3-L5 laminectomy with fusion and device. Plaintiff completed training through Pennsylvania Office of Vocational Rehabilitation (OVR) in 2004 and    starting working for Tyco Electronics

- 4 -

in a sedentary position as an application developer in 2006.  In 2012, the

Plaintiff underwent an anterior cervical discectomy and fusion with

device.

       b.     In 2012 and 2013, Plaintiff began to experience

symptoms of increasing neck pain and lower back pain and saw Curtis

Goltz, D.O., an orthopedic surgeon at Orthopedic Institute of

Pennsylvania who has been treating Plaintiff for over seven years.

       c.     By 2014, the pain worsened to his lower back,

hips, and down his legs.  The pain was so severe that on April 2, 2014,

Plaintiff was unable to go to work.

       d.     On or about April 15, 2014, Plaintiff filed an

initial claim for Short Term Disability, which was approved by MetLife on

or about April 23, 2014.  On October 8, 2014, Plaintiff's Short-Term

Disability benefits ended.

       e.     Plaintiff saw Dr. Goltz on April 16, 2014, who

diagnosed Plaintiff with history of "lumbar laminectomy and fusion,

lumbar spine" and "anterior cervical discectomy and fusion, cervical

spine, with radicular symptoms bilateral lower extremities."  Dr. Goltz

noted that the cervical spine x-rays of Plaintiff showed "mild proximal

degenerative change."  Dr. Goltz also reviewed lumbar films that

"demonstrate laminectomy and fusion metallic hardware from L3 to L5.

Degenerative change is noted proximally and distally."

f.      On May 27, 2014, Plaintiff went to Johns Hopkins Medicine for a second opinion with Dr. Ali Kemal Ozturk regarding getting a second spinal fusion surgery.  At the direction of Dr. Ozturk, on June 6, 2014, Plaintiff underwent a CT spine lumbar with contrast, which showed that Plaintiff had "posterior spinal fusion of L3, L4, and L5," and "mild central spinal canal stenosis" and "mild bilateral neural foraminal stenosis" on L2/L3.  The CT also showed "moderate right neural foraminal stenosis" on L3/L4, and "mild left and moderate to severe right neural foraminal stenosis" on L4/L5, and "moderate right and mild left neuroforaminal stenosis" on L5/S1.

g.      On July 22, 2014, Plaintiff also consulted with Dr. Norman Haueisen at Susquehanna Valley Pain Management, located at 825 Sir Thomas Ct, Harrisburg, PA 17109.  Dr. Haueisen reviewed Plaintiff's CT scan and MRI and diagnosed Plaintiff with code 724.4 lumbar or thoracic spinal radiculopathy.

h.      On August 22, 2014, Plaintiff received a temporary spinal cord stimulator.  On October 10, 2014, Dr. Goltz performed a Thoracic Laminectomy operation at levels T10, T11 with placement of permanent Medtronic dorsal column stimulator and battery pack, on Plaintiff.

i.      On July 28, 2016, Plaintiff underwent an x-ray and office visit with Dr. Goltz.  Dr. Goltz read the x-ray diagnostic test performed that same date and opinion that Plaintiff had a "history of

cervical fusion, C5-6 and 6-7.  History of lumbar laminectomy and fusion, 3-4 and 4-5.  Chronic lumbar radiculopathy.  Chronic cervical radiculopathy.  Peripheral ulnar nerve compression, left."

        j.      On July 28, 2016, Dr. Goltz also completed and returned Defendant's Restrictions & Limitations form, noting that Plaintiff's capabilities will "most likely worsen."

### Plaintiff's Applications for Long Term Disability Benefits under the LTD Plan

18.    On or about April 15, 2014, Plaintiff opened a claim for short-term disability.  On August 11, 2014, Plaintiff opened a long-term disability claim under the Plan.

19.    On December 5, 2014, MetLife denied Plaintiff's application for long term disability effective October 13, 2014, alleging that Plaintiff's "restrictions and limitations of no lifting greater than 20 pounds, occasional bend, twist stoop and the ability for position changes does not support you are unable to perform the duties of your job."

20.    On or about May 29, 2015, Plaintiff, through his counsel, appealed the denial.

21.    MetLife selected a physician to review Plaintiff's appeal.  Despite not speaking to any of Plaintiff's treating physicians, the independent physician consultant noted in reviewing Plaintiff's medical records, "significant facet degenerative change and at least moderate

narrowing of the right neural foramen" at L5-S1, and "moderate to severe right neural foraminal stenosis at L2-2."

22.    It is believed, and therefore averred, that on or about July 9, 2015, MetLife conducted a vocational review on Plaintiff.  Plaintiff was never interviewed or questioned for the review, and the vocational review was never provided to Plaintiff.

23.    Regardless, the vocational review found that Plaintiff is "precluded from his own occupation from 4/16/14 – 11/28/14" and, "From 11/28/14 forward, EE [presumably, "EE" means employee] . . . would not be competitively employable."

24.    On or about July 14, 2015, Defendant MetLife reversed the denial and upheld Plaintiff's appeal, paying to the Plaintiff the LTD benefits due under the LTD Plan retroactive to October 8, 2014, (180 days after the April 9, 2014, date the disability was recorded) and resumed making monthly total disability benefits to him because it agreed that Plaintiff was considered "disabled" as defined by the LTD Plan due to "a Disc Degeneration, Cervical Degeneration, Low Back Pain and Lumbar Post Laminectomy Syndrome."

25.    Page 42 of the LTD Plan contains the following provision:  a claimant with "any disease or disorder of the spine or extremities and their surrounding soft tissue" will be entitled to benefits for the lesser of 24 months or the maximum benefit period, referred to as a "limited condition," unless the Disability has "objective evidence" of

"seropositive arthritis; spinal tumors, malignancy, or vascular malformation; radiculopathies; myelopathies; traumatic spinal cord necrosis; or myopathies." (LTD Plan, Exhibit 1, p. 42).

26.     On or about July 15, 2015, MetLife's social security vendor petitioned for Social Security Disability benefits on behalf of Plaintiff.

27.     MetLife's social security vendor identified Plaintiff's primary diagnosis as: "Disc Degeneration," "Cervical Degeneration," "Radiculopathy," "Lumbar Post Laminectomy Syndrome," "Low Back Pain," "Inflammatory Neuropathy," and "Spinal Stenosis."

28.     Plaintiff was awarded Social Security Disability benefits.

29.     In July of 2016, MetLife sent a letter with the incorrect employer name and claim number to the Plaintiff, demanding that additional medical evidence be provided by July 31, 2016.

30.     On October 5, 2016, Plaintiff, through his counsel, emailed and mailed a letter to Defendant's long-term disability claim specialists, reiterating the objective evidence from Dr. Goltz concerning Plaintiff's entitlement to LTD benefits, and pointing out that Plaintiff's medical condition had not improved. The correspondence also noted that the 2014 CT Spine Lumbar with Contrast performed on Plaintiff that objectively showed that Plaintiff suffers from neuroforaminal stenosis, "a

compression of a spinal nerve as it leaves the spinal canal through the foramen," at the L2/L3, L3/L4, and L4/L5 levels.

31.     By letter dated October 6, 2016, Defendant again terminated LTD benefits to Plaintiff effective October 7, 2016, stating that while Plaintiff "is disabled due to Degenerative Disc Disease," he was disqualified after 24 months because there "is no **diagnostic evidence** noted in the report that would support **ongoing disability** due to a non-limited condition." (emphasis added).

32.     As noted in paragraph 25 above, the LTD Plan does not require that there be "diagnostic evidence" supporting an "ongoing disability." Even assuming arguendo that "diagnostic evidence" is what is required under the LTD Plan, there is ample "diagnostic evidence" supporting Plaintiff's ongoing disability.

33.     On November 29, 2016, MetLife notified Plaintiff that it was reviewing the termination of Plaintiff's LTD benefits.

34.     On December 7, 2016, MetLife provided Plaintiff with a document entitled "Physician Consultant Review," purporting to be a report prepared by an independent physician consultant of defendant,

35.     The Physician Consultant selected by MetLife never treated Plaintiff, never examined Plaintiff, and is not Board Certified in orthopedic surgery.

36.     It is believed, and therefore averred, that the Physician
Consultant selected by MetLife did not review the earlier independent
physician review performed on June 25, 2015.

37.     The Physician Consultant Review noted objective
evidence found in Plaintiff's medical history.

38.     The Physician Consultant Review noted that
"**Radiculopathy** is mentioned several times. . . it **does receive partial**
**support in the physical examination findings** of decreased sensation
in the L5 and S1 dermatomes and leg weakness. . ."

39.     The Physician Consultant Review provided several
examples of objective evidence of radiculopathies found in his review of
Plaintiff's record, including:

    a.      On Plaintiff's April 16, 2014, visit, Dr. Goltz
noted "**Mild paraspinal ropiness**. . . mildly positive Phalen tests, right
more than left; **mild limitation of lumbar flexion and extension**;
subjective sensory changes in both calves and feet."

    b.      On Plaintiff's April 16, 2014, visit with Dr. Goltz,
"**X-rays showed** cervical hardware in good position **with mild proximal**
**degenerative change**, and **lumbar films showed** laminectomy and
fusion hardware from L3 and L5 with proximal and **distal degenerative**
**changes**."

    c.      On an April 22, 2014, MRI of Plaintiff ordered by
Dr. Goltz, the "**MRI of lumbar spine**. . . **showed**. . . **marrow edema**
**anteriorly** at the end plates at L2-L3, likely from **ongoing degenerative**
**change**; mild **marrow edema** and [sic] also seen at L5-S1.  Specific levels
showed:  at L2-L3 a **bulging disc with associated facet degeneration**
and mild narrowing of the neuroforamina. . . at L5-S1 the **disc budge**
and there were **significant facet degenerative changes** and at least
**moderate narrowing of the right neural foramen**."

    d.      On May 7, 2014, Dr. Goltz's exam of Plaintiff
showed "**moderate limitations of flexion and extension** and **moderate**
- 11 -

**paraspinal ropiness** in the lumbar area; **mild paraspinal ropiness** in the neck area; positive Phalen and Tinel signs bilaterally with subjective sensory changes."

e.     On May 7, 2014, "Electrodiagnostic testing had shown bilateral CTS. **MRI** was reviewed. Impression: **lumbar radiculitis** with adjacent level disease and bilateral CTS."

f.     On a May 30, 2014, report by Dr. Ozturk at Johns Hopkins, Plaintiff underwent a **"lower limb electrodiagnostic testing report**: [which was] unremarkable except for possible **mild, axonal sensory more than motor peripheral polyneuropathy and possible old right L5 radiculopathy**. . ."

g.     On a June 6, 2014, lumbar myelogram requested by Dr. Ozturk of Plaintiff, showed "findings of **postoperative change including laminectomy defects** at L4, L5, and S1; screws and rods were seen; there was **moderate loss of disc height** at L2-3, which associated anterior endplate osteophytes. Post injection **radiographs** suggested a **possible disc bulge** at L2-3 with **impingement** on the ventral aspect of the canal."

h.     Also, in the June 6, 2014, report of Dr. Ozturk, the **"CT scan of lumbar spine** [showed] **abnormal findings** at specific levels."

i.     In Dr. Goltz's June 26, 2014, report Plaintiff's **"Exam** [showed] normal stance but antalgic gait; **mild cervical paraspinal ropiness**, negative Spurling, marked tightness in the trapezii and medial to the scapulae; mild hyperreflexia; **marked lumbar paraspinal ropiness.**"

j.     In Dr. Goltz's November 20, 2014, report, Plaintiff's **"Exam** [showed] no tenderness but **'marked paraspinal ropiness,'** limited flexion of the thoracolumbar area. . . Impression: history of lumbar laminectomy and fusion, thoracic laminectomy and spinal cord implantation, history of anterior cervical discectomy and fusion."

k.     In Plaintiff's July 28, 2016, exam with Dr. Goltz, it was found that Plaintiff had "limited flexion and extension with **moderate paraspinal ropiness**; marked weakness. . . **X-rays showed nothing new**. Impression: prior surgery with **chronic lumbar and cervical radiculopathy** and left peripheral ulnar nerve compression." (emphasis added).

40.    On December 19, 2016, Dr. Goltz of Orthopedic Institute of Pennsylvania provided a narrative response to the Defendant's Physician Consultant Review.  Dr. Goltz physically examined Plaintiff for over seven years and has interpreted objective tests and performed surgery on Plaintiff several times.

41.    In his narrative reports, Dr. Goltz identified several errors in MetLife's Physician Consultant Review and reiterated the objective evidence of radiculopathy is found in Plaintiff's MRIs, both reports and images regarding his neck and low back surgery, and additional subsequent radiologic reports specifically x-rays of further degenerative changes.

42.    By letter dated January 13, 2017, but not received until February 6, 2017, MetLife's Appeal Specialist reaffirmed MetLife's previous denial decision of October 5, 2016.  This denial appeal was erroneous and in bad faith because it ignored overwhelming, compelling objective medical evidence confirming that the Plaintiff is entitled to LTD benefits under the meaning of the LTD Plan.

43.    MetLife's denial of the appeal was arbitrary and capricious.

44.    The course of action by MetLife in terminating the LTD Benefits to Plaintiff, was undertaken by MetLife in bad faith, and is wrongful and contrary to the law when read in conjunction with the provisions of the LTD Plan.

45.     Plaintiff is fully disabled and unable to work in any occupation, and there is objective evidence of his radiculopathy.

46.     As a result of the aforementioned wrongful and illegal termination of monthly LTD Benefits of $3,864.00, the Plaintiff has suffered damages in the amount of $50,232.00 to date, and will continue to suffer $3,846.00 in damages per month thereafter until the age cessation date under the LTD Policy.

47.     As a result of the aforedescribed actions of the Defendant, Plaintiff has been constrained to retain the services of legal counsel and has incurred attorney's fees and costs in prosecuting this action and anticipates incurring future additional attorney's fees and costs in subsequently pursuing this action, all in an amount that is currently unknown.  Plaintiff therefore requests an award of reasonable attorney's fees and costs.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

1.     For benefits payable under the LTD Policy to reimburse Plaintiff for payment the Plaintiff has been entitled to receive, which as of the filing of this lawsuit total $50,232.00;

2.     For benefits payable under the LTD Policy after the filing of this lawsuit in the amount of $1,695.00 per month through the age cessation date under the LTD Policy totaling $152,550.00;

3.      For an award of prejudgment interest;

4.      For an award of reasonable attorney's fees pursuant to 29 U.S.C.A. §1132(g)(1);

5.      For costs of suit incurred; and

6.      For such other and further relief as the Court deems just and proper.

Respectfully submitted,

STROKOFF & COWDEN, P.C.

By:_____
Elliot A. Strokoff, Esq.
I.D. No. 16677
Catherine E. Rowe, Esq.
I.D. No. 315907
132 State Street
Harrisburg, PA  17101
(717) 233-5353

DATE: 4/26/18

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Brendan Roden-Reynolds,    :
                Plaintiff    : Case No.
                      :
     v.                :
                      :
Metropolitan Life Insurance  : JURY TRIAL DEMANDED
Company,                 :
                      :
and                      :
                      :
Tyco Electronics Corporation  :
and Tyco Electronics Long Term :
Disability Plan           :
                      :
          Defendants.  :

---

**VERIFICATION**

---

    I, **Brendan Roden-Reynolds**, certify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

_____
Brendan Roden-Reynolds

DATE: 04/25/2018

- 15 -